IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>  v.<br><br>PROMEDICA HEALTH SYSTEM, INC.,<br><br>    Defendant. | CASE NO. _____<br><br>(Removal from: the Court of Common Pleas, Lucas County, Ohio, G-4801-CI-0202002321-000) |

## NOTICE OF REMOVAL

Over the past two decades, the federal government has engaged in an extensive effort to build a nationwide health information technology infrastructure. This case challenges the legitimacy of actions ProMedica has taken in connection with pursuing that directive. ProMedica therefore removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). In support of this removal, ProMedica provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

## NATURE OF THE CASE

1. On June 12, 2020, Plaintiff John Doe filed a complaint against ProMedica, in the Court of Common Pleas, Lucas County, Ohio, Case No. G-4801-CI0-0202002321-000.

2. Plaintiff served ProMedica with the Complaint on June 17, 2020.

3. Plaintiff's three-count Complaint purports to challenge ProMedica's routine on-line practices as various invasions of privacy.

4. Plaintiff alleges that ProMedica operates a website that provides information to the public and allows patients to communicate "about conditions, treatments, providers, payments, and access to medical records through" a "MyChart patient portal." Compl. ¶ 39.  Plaintiff alleges that he

is a ProMedica patient, and "user of the ProMedica patient portal located at www.promedica.org." *Id.*, ¶ 12.

5. Plaintiff says that ProMedica employs "source code" on its website for various third-party services (such as Google and Facebook) who, in turn, help ProMedica "measure traffic and optimize" its "online marketing." Compl. ¶ 54.

6. Plaintiff does not assert that ProMedica discloses names, social security numbers, diagnoses, birth dates, or comparable information to the third-parties. Instead, Plaintiff highlights data such as IP addresses, user-agent identifiers, and "browser fingerprints." Compl. ¶ 80.

7. Based on these general facts, Plaintiff seeks to bring this case as a class action, Compl. ¶ 249, and asserts claims for: (1) disclosure of non-public medical information, Compl. ¶¶ 263-73, (2) breach of confidence, Compl. ¶¶ 274-284, and (3) Invasion of Privacy – Intrusion Upon Seclusion, Compl. ¶¶ 285-289.

## BASIS FOR REMOVAL

8. ProMedica removes this case pursuant to the Federal Officer Removal Statute. 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …" *Id.* § 1442(a)(1).

9. The Supreme Court has directed that the federal officer removal statute is to be broadly construed, and defendants remove under this statute when they are acting under color of federal office. To do so, they must show that they "acted under the direction of a federal officer," that "the actions for which it is being sued were performed under the color of federal office," and that "there is a colorable federal defense to the plaintiff's claims." *In re National Prescription Opiate Litig.*, 327 F. Supp. 3d 1064, 1069-70 (N.D. Ohio. 2018).

10. Since at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized and directed providers who participate in the Medicare and Medicaid program (like ProMedica) to offer patients online access to their records, and to optimize patient engagement with their medical information. The federal government has also modeled the behavior it wants to see; it has created a portal for Medicare beneficiaries and worked with the same third-party services, with the same "source code," at issue in this case.

11. ProMedica has dutifully followed the federal government's lead in this effort. In so doing, it has acted within the penumbra of federal action and office. Given this, and because this suit challenges this federally-directed conduct, the requirements of the federal removal statute are satisfied.

### *The Meaningful Use Program*

12. In 2004, the President issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id.*

13. Five years later, Congress codified the office in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars to CMS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id.*

3

14. Consistent with its mandate, the ONC has published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "collaborate with . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it-strategic-plan-2015-2020.php.

15. And, in the 2020-2025 plan, it noted that this has already happened, saying: "The federal government and private sector have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-01/2020-2025FederalHealthIT%20StrategicPlan_0.pdf ("2020-2025 Strategic Plan")

16. One critical aspect of this strategy is CMS' "Meaningful Use" program. 42 C.F.R. § 495.2-495.370. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records through the creation of patient portals.

17. Under this program, providers must meet certain criteria in order to receive full Medicare reimbursement, one of which is having an interoperable patient portal. Regulations provided for incentive payments of up to two percent for providers who reached certain level engagement with electronic health record use through the patient portal.

18. To achieve those specifications, CMS recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records.

19. The ONC has specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly." ONC has also specified "how a patient portal helps achieve

4

meaningful use requirements," and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013) available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patientengagement.pdf.

20. In addition to this guidance, CMS has created its own portal, offering a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy.

### *ProMedica is a "Person"*

21. By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

22. While the statute is silent as to the definition of a "person", organizations and corporate defendants have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010).

23. ProMedica is a non-profit organization in Ohio, Compl. ¶ 13, and qualifies as a person under the statute.

### *ProMedica is Acting Under a Federal Officer*

24. This element focuses on the relationship between the federal government and the private entity. It asks whether the entity is assisting or helping to carry out a federal officer's duties or tasks, and whether the relationship between the government and private entity involves "detailed

regulation, monitoring, or supervision." *Watson v. Philip Morris Co.*, 551 U.S. 142, 153 (2007).

25. In the Sixth Circuit, a number of factors are relevant to this analysis. These include: (1) whether the entity is "helping the government to produce an item it needs;" (2) whether the federal government would handle the task on its own absent the private entity's involvement; (3) whether the government provided specifications for how the work should be done; and (4) whether the government closely monitored the private entity's conduct. *See, e.g. Bennett*, 607 F.3d at 1086-87.

26. Each of these factors illustrates that the federal government is incentivizing, regulating, monitoring, and supervising ProMedica's actions in the Meaningful Use program in order to meet a national priority of interoperable health information technology.

27. First, ProMedica is "helping the government produce" the nationwide, interoperable information technology infrastructure for health information. The federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

28. Second, in the absence of ProMedica's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscores, it would likely attempt to do exactly that.

29. Third, the government has specified how to best enhance patient engagement, including through a patient portal. It has clarified how to generally design the portals, and has told entities

6

how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

30. Finally, the government has created an office dedicated to this issue and has closely monitored the work of private entities (like ProMedica). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes ProMedica and comparable organizations to not only maintain patient portals for their patients, but also to achieve meaningful use of these portals.

### *Plaintiff's Claims Relate to the Actions Under Color of Federal Office*

31. Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office.

32. Part of Plaintiff's sprawling seventy-seven page complaint directly challenges ProMedica's patient portal, and alleged privacy violations relating to the patient portal. Plaintiff alleges that if an individual visiting ProMedica's website "decides to sign into her patient portal," ProMedica will allegedly disclose this fact to Facebook, including prior communications to the ProMedica website. Compl. ¶ 192.

33. Plaintiff claims that this "disclosure" reveals protected health information to Facebook under federal law. Compl. ¶ 193; *id.*, ¶¶ 17-20 (allegations regarding federal Health Insurance Portability and Accountability Act of 1996 and regulations thereunder).

34. Plaintiff's Complaint also generally targets ProMedica's tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its patient portal and public medical websites. This – as manifested by the government's own use of these third parties – is precisely what the Meaningful Use program envisions.

35. Indeed, as Plaintiff himself alleges, the entire point of using the third-party services is to direct traffic to, and increase engagement with, ProMedica's website and portal. For example, he alleges that Google Tag manager, "help[s] you measure traffic and optimize your online marketing." Compl. ¶ 54. Likewise, he says that the "Facebook Pixel" helps to "Optimize delivery to people likely to take action." *Id.* ¶ 64.

### *ProMedica Raises Colorable Federal Defenses to Plaintiff's Claims*

36. The final requirement for removal under this statute "erects a low bar and merely requires that the defendant's assertion is both defensive" and "based in federal law." *In re National Prescription Opiate Litig.*, 327 F. Supp. 1070 *citing Mesa v. Cal.*, 489 U.S. 121, 129-30 (1989).

37. There are *at least* two colorable federal defenses to the claims at issue here that satisfy this requirement.

38. First, ProMedica will argue that the specific information that traffic on ProMedica's website is not covered by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and that the information that is purportedly disclosed (i.e., IP addresses and other web metadata) are outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act ("HIPAA"). The Northern District of California has already made this holding in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

39. Second, to the extent that they ever could create a viable cause of action under Ohio law, ProMedica will argue that federal law preempts Plaintiff's common-law claims for disclosure of non-public medical information, breach of confidence, and alleged invasion of privacy. Compl. p. 71-76. Notably, a similar issue is currently pending before the Ohio Supreme Court,

*see Menorah Park Center for Senior Living v. Rolston*, 2020-Ohio-3206, No. 2019-0939 (*sua sponte* ordering briefing on whether "this court [should] overturn or modify the holding in *Biddle* . . . in light of the enactment of" HIPAA and "subsequent promulgation of the HIPAA Privacy Rule").

40. Because each of the four requirements of the statute are satisfied, removal to this Court is proper.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

41. ProMedica satisfies all of the procedural requirements under 28 U.S.C. § 1446.

42. ProMedica is filing this Notice of Removal within thirty (30) days of the its receipt of the Complaint by "service," 28 U.S.C. § 1446.

43. ProMedica files this Notice in the United States District Court of the Northern District of Ohio, because the State court in which the action is pending, the Common Pleas for Lucas County, is within this federal judicial district. This Notice is signed pursuant to Federal Rules of Procedure 11.

44. ProMedica has attached a copy of "all process, pleadings, orders, and other documents," currently "on file in the state court, including Plaintiff's Complaint and Plaintiff's Motion to Proceed Under a Pseudonym or in the Alternative for Impoundment of his Name and Other Personally Identifiable Information.

45. Upon filing this notice, ProMedica will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the Court of Common Pleas.

## CONCLUSION

As set forth above, Plaintiff's Complaint directly challenges practices and procedures ProMedica has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiff's Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

        Respectfully submitted,

        */s/ David A. Carney*
        David A. Carney (0079824)
        Joshua D. Rovenger (0099328)*
        BAKER & HOSTETLER LLP
        Key Tower
        127 Public Square, Suite 2000
        Cleveland, Ohio 44114
        Telephone: (216) 621-0200
        Facsimile: (216) 696-0740
        Email: dcarney@bakerlaw.com
        Email: jrovenger@bakerlaw.com

        *Attorneys for Defendant*
        *ProMedica Health System, Inc.*

        *Application for Admission to
        Northern District of Ohio forthcoming

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of the foregoing was served via ECF and email this 17th day of July, 2020 on all counsel of record for Plaintiff:

Stuart E. Scott (0064834)
Kevin C. Hulick (0093921)
SPANGENBERG SHIBLEY & LIBER LLP
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (f)
sscott@spranglaw.com
khulick@spranglaw.com

Mitchell Breit
Jason "Jay" Barnes
SIMONS HANLY CONROY LLC
112 Madison Ave, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (f)
mbreit@simmonsfirm.com
jaybarnes@simmonsfirm.com

                                               */s/ David A. Carney*
                                               *Counsel for ProMedica*