PLAINTIFF'S EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, on behalf of themselves and all others similarly situated<br><br>　　　　Plaintiff<br><br>　v.<br><br>PROMEDICA HEALTH SYSTEMS, INC.<br><br>　　　　Defendant | CASE NO. 3:20-CV-01581<br><br>JUDGE JACK ZOUHARY |

**PLAINTIFF'S REPLY ON MOTION TO REMAND**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

    I.    THERE IS NO "FEDERAL COMMAND" TO CREATE A PATIENT PORTAL OR DISCLOSE PATIENT DATA TO FACEBOOK ........................................... 1

    II.    THERE IS NO FEDERAL OVERSIGHT HERE ................................................... 3

    III.    THE BROBST DECLARATION IS LATE AND DOES NOT HELP PROMEDICA ANYWAY ...................................................................................... 4

    IV.    HIPAA IS NOT A COLORABLE DEFENSE ....................................................... 5

CERTIFICATE OF SERVICE ................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010)..................................................................... 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014).................................... 4

*Doe v. MedStar*, No. 24-C-20-000542 (Baltimore Cty., MD Aug. 5, 2020) ................................. 6

*Doe v. Virginia Mason*, 2020 WL 1983046 (King County, Wash. Feb. 12, 2020) ........................ 6

*Mays v. City of Flint*, 871 F.3d 437 (6th Cir. 2017) ............................................................... passim

*Smith v. Facebook*, 262 F.Supp.3d 943 (N.D.Cal.2017) ............................................................... 6

## Statutes

20 U.S.C. § 1232g............................................................................................................................ 6

28 U.S.C. § 1446(b) ........................................................................................................................ 4

42 U.S.C. § 1320d-7(a)(2) ............................................................................................................... 6

42 U.S.C. § 193x(ee)........................................................................................................................ 8

## Other Authorities

42 C.F.R. § 482.21-45...................................................................................................................... 8

42 C.F.R. § 495.24(e)....................................................................................................................... 2

42 C.F.R. § 495.40 .................................................................................................................. 3, 4, 5

45 C.F.R. § 160.103 ......................................................................................................................... 6

45 C.F.R. § 160.202 ......................................................................................................................... 7

45 C.F.R. § 160.203(b) .................................................................................................................... 7

CMS, EHR Incentive Program Stage 3 Rule, 80 FR 62842 (Oct. 16, 2015)................................... 2

CMS, *Meaningful Use Stage 2 Final Rulemaking*, 77 FR 54008 (Sept. 4, 2012) ...................... 2, 7

*Promoting Interoperability Final Rule*, 83 FR 41662 (Aug. 17, 2018).................................... 3, 7

*Stage 1 Final Rule*, 75 FR 44368 (Jul. 28, 2010) ....................................................................... 2, 7

*Stage 2 Final Rule*, 77 FR 53998 (Sept. 4, 2012) ...................................................................... 3, 7

*Stages 2 and 3 Final Rule*, 80 FR 62832 (Oct. 16, 2015)........................................................... 3, 7

**INTRODUCTION**

This case arises out of the Defendant healthcare provider's disclosures of personally identifiable patient data and communications to Facebook, Google, Microsoft, and Quantcast. Plaintiff's Motion to Remand is focused on binding precedent from the United States Supreme Court and Sixth Circuit Court of Appeals. To Plaintiff's knowledge, other than the *UPMC* case in Pennsylvania, there is no other case in the 205-year history of federal officer removal where a court found removal appropriate for a private entity in the absence of a specific federal delegation of legal authority, contract, employer-employee relationship, principal-agent relationship, or the provision of a good that was the federal government's property. Defendant's Response fails to cite any authority to the contrary. Rather than respond the binding Supreme Court and Sixth Circuit cases, Defendant introduces new evidence that overlooks basic facts about the Promoting Interoperability Program and regulations on which it relies, while gliding past binding precedent.

**ARGUMENT**

**I. THERE IS NO "FEDERAL COMMAND" TO CREATE A PATIENT PORTAL OR DISCLOSE PATIENT DATA TO FACEBOOK**

Defendant argues that it acted "in response to this federal command." Doc. 15. at 7. But, despite submitting 148 new pages of Exhibits in its Response (that it did not previously submit with its Notice of Removal), Defendant never identifies a specific "federal command." Nor does it provide any evidence of: a delegation of authority from a federal officer; a contract; an employer-employee relationship; a principal-agent relationship; direction or guidance from any federal officer directing Defendant to disclose personally identifiable patient data and communications to third parties for marketing purposes; a duty for any federal officer to disclose personally identifiable patient data or communications to third parties for marketing purposes; a duty for any federal officer (or hospital) to create a web property for patients; a duty for any federal officer (or

1

hospital) to create a patient portal; a task or service which, in the absence of Defendant's help, a federal officer would have to perform for itself; or how the deployment of third-party marketing tools that cause personally identifiable disclosures of patient data to Facebook and others is in any way related to the Promoting Interoperability Program.

There are simple reasons for these failures. The Promoting Interoperability Program is not a "federal command" at all, but a voluntary program that incentivizes the use of *electronic medical records – not online patient portals*. In fact, given Promoting Interoperability's goal of incentivizing the use of electronic medical records in order to make medical records more portable between providers, it does not require any federal officer or hospital to even create a website or a patient portal to qualify. *See* CMS, EHR Incentive Program Stage 3 Rule, 80 FR 62842 (Oct. 16, 2015) ("[N]ot only do we not require a 'patient portal' format …, we also do not advocate such a limit on innovation in software or systems designed to allow patients to access and engage with their health information.") Even if a hospital opts to create a patient portal, Promoting Interoperability does not require the hospital to show that a single patient actually used the patient portal. *See* 42 C.F.R. § 495.24(e).

But more importantly for the purposes of this case, the marketing disclosures to Facebook and others are not permitted by Promoting Interoperability. The federal officers to which Defendant points have repeatedly stated that HIPAA and state privacy laws are not impacted by Promoting Interoperability; and that covered entities remain required to comply with HIPAA privacy rules. CMS has expressly stated, "No requirement of meaningful use [promoting interoperability] supersedes any Federal, State, or local law regarding the privacy of a person's health information." CMS, *Meaningful Use Stage 2 Final Rulemaking*, 77 FR 54008 (Sept. 4, 2012); *Stage 1 Final Rule*, 75 FR 44368 (Jul. 28, 2010) ("[C]ompliance with HIPAA privacy and

2

security rules is required for all covered entities, regardless of whether or not they participate in the EHR incentive programs."); *Stage 2 Final Rule*, 77 FR 53998 (Sept. 4, 2012); *Stages 2 and 3 Final Rule*, 80 FR 62832 (Oct. 16, 2015); *Promoting Interoperability Final Rule*, 83 FR 41662 (Aug. 17, 2018).

In the absence of any affirmative command or direction from a federal officer to do so, Defendant claims it was acting under a federal officer when it made disclosures of personally identifiable patient data to Facebook and others for marketing purposes without patient authorization. But how could Defendant be acting under a federal officer in doing so when the very federal officers to which it points have the opposite affirmative duties to protect patient privacy? In *Mays v. City of Flint*, 871 F.3d 437, 445 (6th Cir. 2017), the Sixth Circuit explained that "a government contractor entitled to removal would be contractually required to follow the federal government's specifications in making products or providing services … and would not ordinarily have any authority to take actions beyond those specified in the contract." Here, Defendant has not cited any specifications or directions from federal officers to Defendants that order or encourage disclosures to Facebook, Google, or others for marketing purposes. Lacking such authority or specifications, the Defendant cannot successfully invoke federal officer removal.

## II.     THERE IS NO FEDERAL OVERSIGHT HERE

Defendant argues that there is "required certification by the federal government with respect to every meaningful use requirement." Doc. 15 at 10, citing 42 C.F.R. § 495.40. But the only "evidence" Defendant cites is that "[t]he Department of Health and Human Services' regulations speak for themselves." *Id*. at 9. It then concedes that these regulations merely "required ProMedica to provide annual reports regarding the meaningful use requirements in order to receive incentive reimbursements – which ProMedica did." *Id*. at 10. Defendant neglects to mention that the annual reports are not overseen by any federal officer in a meaningful way, but instead consist

3

only of the Defendant's "attestation" that it complied with the regulations. 42 C.F.R. § 495.40, requiring only *attestation*, not oversight. This "attestation" is nothing like the oversight or supervision detailed in *Bennett v. MIS Corp.*, 607 F.3d 1076, 1087 (6th Cir. 2010). Rather, it is more like the alleged oversight in *Mays*, where the entity arguing for federal officer removal invoked the fact that "it had to periodically submit reports detailing compliance with regulations that had been adopted into state law" in order to "obtain primary enforcement authority" and federal funding. *Mays*, 871 F.3d at 446. The Sixth Circuit explained that this was not enough. *Id*. *Watson* indicates that compliance reporting, even if detailed, is insufficient by itself to merit federal-offer removal.")

### III. THE BROBST DECLARATION IS LATE AND DOES NOT HELP PROMEDICA ANYWAY

Defendant submits the Declaration of Debi Brobst ("Brobst Declaration") in support of its Response to Plaintiff's Motion to Remand. Doc. 15-3. *First*, in *Mays*, the defendants cited several communications with the EPA in their brief, but because the defendants "did not cite these exhibits in the notice of removal, the communications are not among the pleadings that [the court] can review on appeal of the district court's determination that it facially lacked jurisdiction." *Mays*, 871 F.3d at 446. According to the logic of *Mays*, the Brobst Declaration is inadmissible. Defendant's opportunity to establish the facts necessary for federal officer removal was in its Notice of Removal, not in a rebuttal made after the 30-day requirement for filing the notice of removal and the facts upon which it is based under 28 U.S.C. § 1446(b). Defendant's citations on post-removal admissibility are inapposite. Its principal case, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014), held merely that a defendant's "amount-in-controversy allegation" in a notice of removal is accepted until challenged.

4

*Second*, even if the self-serving Brobst Declaration is admissible despite not being submitted with Defendant's Notice nor Plaintiff having the opportunity to examine Ms. Brobst, it does not provide any evidence that Defendant was acting under a federal officer when it disclosed personally identifiable patient data and communications to Facebook and others. The Brobst Declaration does not identify any "federal command" or direction to disclose patient data to Facebook or even create a patient portal. Instead, Brobst merely says "As part of its participation in the Meaningful Use program, ProMedica created a patient portal for use by its patients called MyChart." Doc. 15-3 at ¶ 3. She then states, "Each year ProMedica submitted reports on ProMedica's involvement in the Meaningful Use program to [CMS] through the QualityNet Secure Portal[.]" *Id*. at ¶ 4. She finishes by stating that Defendant has "been successful in meeting these federal criteria at least in part because of increased patient awareness and increased patient use of the MyChart patient portal." *Id*. at ¶ 5. Indeed, Defendant concedes that 42 C.F.R. § 495.40 merely "required ProMedica to provide annual reports regarding the meaningful use requirements in order to receive incentive reimbursements – which ProMedica did." Doc. 15 at 10. All Defendant has established with its employee declaration is that, like the rejected *Mays* evidence, Defendant has engaged in mere "compliance reporting" to qualify for incentive payments under Medicare and Medicaid. *See Mays*, 871 F.3d at 446. ("*Watson* indicates that compliance reporting, even if detailed, is insufficient by itself to merit federal-offer removal."). Having taken a second bite at the apple, Defendant still failed to present evidence of any federal supervision or oversight. Accordingly, its federal officer removal gambit must fail just as it did for the *Mays* defendants.

IV.     **HIPAA IS NOT A COLORABLE DEFENSE**

Defendant's HIPAA argument must also fail. *First*, Defendant asserts that HIPAA only covers data associated with administrative or financial transactions. Doc. 15 at 13-14. Defendant is wrong. The limitation to which it points is in the definition of a "covered entity" under HIPAA

5

(the interstate commerce hook for the constitutionality of the statute), not the definition of personal health information that is protected by the statute. Compare the definitions of "covered entity," "protected health information," and "individually identifiable health information" in 45 C.F.R. § 160.103. "Protected health information means individually identifiable health information … that is transmitted by electronic media, maintained in electronic media; or transmitted or maintained in any other form or medium." The only exceptions are education records subject to 20 U.S.C. § 1232g, employment records held by a covered entity in its role as an employer, and data "regarding a person who has been deceased for more than 50 years." In turn, "individually identifiable health information" is any "information … that (1) is created or received by a health care provider; and (2) relates to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) … identifies the individual; or (ii) with respect to which there is a reasonable basis to believe the information can be used to identify the individual."

*Second*, *Smith v. Facebook* is inapposite – as recognized recently by two courts rejecting motions to dismiss similar cases. In addition to *Doe v. Virginia Mason*, 2020 WL 1983046, at *2 (King County, Wash. Feb. 12, 2020), a Maryland court reached the same conclusion. *Doe v. MedStar*, No. 24-C-20-000542 (Baltimore Cty., MD Aug. 5, 2020) at 3, n.1 (attached as **Exhibit A**).

*Third*, Plaintiff's state common law action to recover for Defendant's unauthorized disclosure of patient data to Facebook for marketing purposes does not raise any preemption concerns. HIPAA does not pre-empt state or local laws that relate to the privacy of individually identifiable health information. *See* 42 U.S.C. § 1320d-7(a)(2). Moreover, the HIPAA regulations

enacted by the federal officers cited by Defendant specifically provide that "more stringent" state rules are not preempted. 45 C.F.R. § 160.203(b), with "more stringent" defined as a state law that "provides greater privacy protection for the individual who is the subject of the individually identifiable health information." 45 C.F.R. § 160.202. The federal authorities on which Defendant relies have consistently reiterated this point. "No requirement of meaningful use (i.e. Promoting Interoperability) supersedes any Federal, State, or local law regarding the privacy of a person's health information." CMS, Stage 2 Final Rule, 77 FR 54008 (Sept. 4, 2012). Moreover, every stage of federal rulemaking for the Promoting Interoperability Program has included an affirmative statement from CMS that HIPAA still applies. CMS, *Stage 1 Final Rule*, 75 FR 44368 (Jul. 28, 2010); *Stage 2 Final Rule*, 77 F.R. 53998 (Sept. 4, 2012); *Stages 2 and 3 Final Rule*, 80 FR 62832 (Oct. 16, 2015); *Promoting Interoperability Final Rule*, 83 FR 41662 (Aug. 17, 2018).

**V.     THE COURT'S PRELIMINARY QUESTIONS**

Defendant's brief begins by answering the Court's pre-motion pre-briefing questions, but these are not dispositive to this motion. *First*, consistent with *Watson* and *Mays*, regulatory compliance is not enough for federal officer removal, which instead require proof of a "contract or other delegation of legal authority." *See Watson*, 551 U.S. at 154 (No removal where "no evidence of any delegation of legal authority … nor … evidence of any contract, any payment, any employer/employee relationship, or any principal/agency relationship."); *Mays*, 871 F.3d at 445. *See* Doc. 14-1 at 10. Here, despite two bites at the apple, Defendant has failed to provide any evidence of a federal officer's delegation of legal authority. *Second*, whether an Executive Order is sufficient to support federal officer removal depends upon the Executive Order. If the President invoked the Defense Production Act to seize a factory, a breach of contract action relating to that

7

factory would be subject to federal officer removal. But the Executive Order at issue in this case is not sufficient for federal officer removal.

*Finally*, Plaintiff asks the Court to consider just one example of the absurdity of Defendant's logic. As a condition of participating in Medicare, Defendant must create and follow a "discharge planning process" according to detailed CMS regulations. 42 U.S.C. § 193x(ee), 42 C.F.R. § 482.21-45. When Defendant complies with these regulations, it is indisputably doing so "to assist or help carry out" CMS's duty to provide access to healthcare services for eligible beneficiaries. Therefore, under Defendant's logic, any malpractice case arising out of alleged negligence during a discharge process would be a federal case. As in *Mays* and *Watson*, Defendant's argument here "would not serve the purpose of the statute," which is "to protect federal officers from state court hostility to the federal government." *Mays*, 871 F.3d at 447-48. "[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Watson*, 551 U.S. at 152 (emphasis in original):

> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. … Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

*Id*. at 153. Here, Defendant has simply provided the Court with another *Watson* argument. If accepted, Defendant's argument would dramatically expand federal court jurisdiction to likely

8

capture thousands of common medical malpractice cases throughout the country. There is simply no support in the actual language of the statute for such an expansion.

                                            Respectfully submitted,

                                            *s/ Kevin C. Hulick*
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*khulick@spanglaw.com*

MITCHELL BREIT (*pro hac vice*)
JASON 'JAY' BARNES (*pro hac vice*)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016-7416
(212) 784-6400
(212) 213-5949 (FAX)
*mbreit@simmonsfirm.com*
*jaybarnes@simmonsfirm.com*

***Counsel for Plaintiff and the Proposed Class***

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of September 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*s/ Kevin C. Hulick*
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*khulick@spanglaw.com*

***Counsel for Plaintiff and the Proposed Class***