IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN DOE, on behalf of themselves and all others similarly situated<br><br>Plaintiff<br><br>v.<br><br>PROMEDICA HEALTH SYSTEMS, INC.<br><br>Defendant | CASE NO. 3:20-CV-01581<br><br>JUDGE JACK ZOUHARY |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO CERTIFY THE COURT'S ORDER DENYING PLAINTIFF'S MOTION FOR REMAND FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)**

Plaintiff, through counsel, submits this memorandum in support of his Motion to Certify the Court's October 30, 2020 order (ECF No. 18) (the "Order"), regarding Plaintiff's Motion to Remand, for interlocutory review pursuant to 28 U.S.C. § 1292(b).

Pursuant to 28 U.S.C. 1292(b), a court may certify an interlocutory order for appeal if it determines that the order (1) involves a controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017).

In this case, the Order centers on a controlling question of law: whether Defendant ProMedica Health Systems, Inc. ("ProMedica") may remove the case to federal court under the Federal Officer Removal Statute, 28 U.S.C. § 1422(a), and thus whether there is subject matter jurisdiction in federal court. In addition, the Order addresses a legal issue that has substantial

grounds for difference of opinion. The Sixth Circuit has not addressed the Federal Officer Removal Statute in the context presented in this case, nor have any other Circuit Courts. Finally, certification would materially advance the ultimate termination of the litigation, because an interlocutory appeal will "'save judicial resources and litigant expense' … [by] terminat[ing] this action in federal court and require[ing] remand back to state court." *Deutsche Bank Nat. Trust Co. v. Weickert*, 638 F.Supp.2d 826, 831 (N.D.Ohio 2009) (quoting *West Tennessee Chapter of Associated Builders and Contractors, Inc. v. City of Memphis*, 138 F.Supp.2d 1015, 1026)). And, an interlocutory appeal will materially advance the ultimate termination of this litigation, because proper jurisdiction is a fundamental issue to any litigation. Certification for appeal should, therefore, be granted.

## ARGUMENT

Interlocutory appeals are permissible under Section 1292(b) when the following three elements are met: (1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *In re Trump*, 874 F.3d at 951. For the reasons set forth below, the Order satisfies all three requirements, and so, certification is appropriate.

### I. THE APPLICABILITY OF THE FEDERAL REMOVAL STATUTE IS A CONTROLLING QUESTION OF LAW

The Sixth Circuit has held that "a legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citation omitted). "Clearly the issue of federal subject-matter jurisdiction would materially affect the final disposition of the case." *Weickert*, 638 F.Supp.2d at 831. Thus, whether removal is appropriate under the federal officer removal statute is a controlling question of law that satisfies the first element for interlocutory appeal.

## II. THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

Novel issues of law within the circuit on which jurists could reasonably disagree satisfy the second element of the certification analysis. *In re Trump*, 874 F.3d at 952. Indeed, "'when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent.'" *Id.* (quoting *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). The Order notes that this issue is one of first impression in this Circuit. Doc. 18 at PageID #: 583.

In order for ProMedica to properly remove under the federal officer removal statute, it must meet four requirements: (1) it is a "person" within the meaning of the statute; (2) the asserted claims are based upon ProMedica's conduct "acting under" the United States, its agencies, or its officers; (3) the asserted claims against ProMedica are "for, or relating to" an act under color of federal office; and (4) ProMedica raises a colorable federal defense to the asserted claims. 28 U.S.C. § 1442(a)(1); *Mays v. City of Flint*, 871 F.3d 437, 442-43 (6th Cir. 2017). ProMedica meets the first element; it cannot meet the remaining three. That said, Plaintiff's motion will focus on the second and third requirements: the "acting under" requirement and, as the Court termed, it the "causal nexus" requirement.

### A. The "acting under" requirement

No Circuit Court has examined whether removal is appropriate under the Promoting Interoperability Program. Even more broadly, neither the Sixth Circuit or any other Circuit have addressed whether removal is appropriate where the party asserting federal officer removal has not identified any specific delegation of federal authority, contractual relationship, employee-

3

employer relationship, or principal agent relationship, but the party relies only on its voluntary participation in a voluntary incentives program.

There is one case that deals with similar conduct: *Doe v. UPMC*, No. 20-cv-359, 2020 WL 4381675 (W.D.Penn. Jul. 31, 2020), which the Order references. While *UPMC* is persuasive authority, it is not controlling. In fact, based on controlling Sixth Circuit precedent, the Sixth Circuit would likely have ruled differently than the *UPMC* court for three reasons. *First*, *UPMC* ruled that the Federal Officer Removal Statute is to be construed "in favor of removal." *Id*. at. *5. This conflicts with *Mays*, which held that "removal statutes are to be strictly construed, and all doubts should be resolved against removal." 871 F.3d at 442. *Second*, *UPMC* ruled that a party seeking federal officer removal need not establish an agent-principal arrangement or something similar but turns only on whether there is "an effort to assist, or to help carry out, the duties or tasks of the federal superior." 2020 WL 4381675, at*3 (quotation omitted). This conflicts with *Mays*' holding that federal officer removal requires some proof of a "contract or other delegation of legal authority[.]" 871 F.3d at 445. *Third*, *UPMC* held that "any dispute about whether the allegedly wrongful conduct was outside the scope of the private entity's duties is the very thing that should be left to a federal court to decide." 2020 WL 4381675, at *4. This, too, conflicts with *Mays*, which explains that "a government contractor would not ordinarily have any authority to take actions beyond those specified in the contract." 871 F.3d at 445.

Relying primarily on *UPMC*, the Court held that "Defendant's participation [in the Promoting Interoperability Program] assisted the federal government in achieving" the goal of creating a unified system of patient electronic health records. Doc. 18 at PageID #: 587. The Court noted that the *UPMC's* court conclusion that "participation in [the Promoting Interoperability Program] was less like the 'regulatory-regulated' relationship in *Watson* and more like a

4

government contractor-relationship that would satisfy the 'acting under' requirement.'" *Id*. at PageID #: 586-87 (quoting *UPMC*, 2020 WL 4381675, at *6).

The Sixth Circuit would likely disagree. Indeed, in *Mays*, the Sixth Circuit rejected defendant's attempt to remove when defendant Michigan Department of Environmental Quality ("MDEQ") claimed it was acting under the EPA even though it received federal funds from the EPA to jointly enforce environmental laws. 871 F.3d at 442-44. The Sixth Circuit reasoned that removal was inappropriate because defendant did not present any evidence of a delegation of legal authority, contract, employer/employee, or principal/agent relationship between the EPA and the MDEQ, and the EPA "was not involved in the key action underlying the Plaintiffs' complaint – approval of the decision to switch Flint's water supply to the Flint River." *Id*. at 446. It further held that that "the absence of language allowing a private entity to act on the federal government's behalf weighs against allowing federal-officer removal." *Id*. at 445 (*citing Ohio State Chiropractic Ass'n v. Human Health Plan, Inc*., 647 F. App'x. 619, 623-24 (6th Cir. 2016)).

In addition, the fact that the MDEQ received EPA funding was not enough to support removal, and neither was defendant's assertion that it was required to "periodically submit reports to the EPA detailing compliance with regulations that had been adopted into state law." *Id*. at 444-46. This is because "[r]eceipt of federal funding alone cannot establish a delegation of legal authority[,]" and "compliance reporting, even if detailed, is insufficient by itself to merit federal officer removal." *Id*.

*Mays* is not an outlier in the Sixth Circuit. *Ohio State Chiropractic* held that removal under federal officer removal was inappropriate for Medicare Advantage Organizations, even though those organizations contracted with federal Centers for Medicare and Medicaid Services, which shows that mere status as a private contractor is not enough. 467 F.App'x. at 623-24. In fact, the

5

Sixth Circuit held that "dictum in *Watson* suggested that some private contractors can invoke the statute, perhaps only those whose relationship with the federal government 'is an unusually close one involving detailed regulation, monitoring, or supervision.'" *Id*. at 622 (quoting *Watson*, 551 U.S. at 153). Similarly, the Sixth Circuit held that employees of the Michigan Department of Environmental Quality were not acting under federal authority, even though the EPA provided federal funding to the Michigan Department of Water Quality to enforce the Safe Drinking Water Act and retained authority to control the agency's actions. *Nappier v. Snyder*, 728 F.App'x. 571, at 574 (6th Cir. 218).

In addition, persuasive authority from other Circuits supports remand. The Ninth Circuit held that "an aircraft manufacturer does not act under a federal officer when it exercises designated authority to certify compliance with governing federal regulations." *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 990 (9th Cir. 2019); *see also Lu Junhong v. Boeing Co.*, 792 F3d 805, 809 (7th Cir. 2015) (holding that "being regulated, even when a federal agency directs, supervises, and monitors a company's activities in considerable detail is not enough to make a private firm a person acting under a federal agency." (quotation omitted)).

In addition, other Circuits are in accord with *Ohio State Chiropractic* that having a contract with the federal government is not sufficient on its own. The Ninth Circuit has also held that energy companies did not satisfy the acting under requirement, even though there were three purportedly controlling agreements: (1) a supply agreement; (2) a coordinating operations agreement over shared land; and (3) a leasing agreement to drill for oil. *County of San Mateo v. Chevron Corp.*, 960 F.3d 586 (9th Cir. 2020). Similarly, the Tenth Circuit held that Exxon Mobile was not acting under the federal government even though it entered into leases with the government to drill for fossil fuels. *Board of County Commissioners of Boulder County v. Suncor Energy (USA) Inc.*, 965

6

F.3d 792 (10th Cir. 2020). The Fourth Circuit held that the defendants' oil supply contracts with the federal government did not amount to acting under the federal government, even though these agreements purportedly helped the government produce an item it needed. *Mayor and City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452, 463 (4th Cir. 2020).

### B. The "causal nexus" requirement

While the bar for showing causal nexus is low, it is not parallel to the ground. The Sixth Circuit explained that "[j]ust as a federal officer could not remove a trespass suit that occurred while he was taking out the garbage, a contractor acting under a federal officer could not remove a suit solely on the ground that but for the contract, it would not have interacted with the plaintiff." *Ohio State Chiropractic Ass'n.*, 647 F.App'x. at 625 (quotation omitted). In this case, the Sixth Circuit held that a private billing dispute between a Medicare provider and a Medicare Advantage organization was not causally connected with the defendant's relationship with the federal officer in question.

Contrast this with *Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010), where the Sixth Circuit held that a contractor met the causal nexus requirement. In that case, plaintiffs, FAA employees, were suing for personal injuries they suffered as a result of toxic mold exposure. The defendant had performed remediation work at the direction of FAA officers under a contract. *Id*. at 1088. The defendant had been hired to remove mold from an air traffic control tower and performed multiple remediations, including a remediation following "the FAA's specifications according to the consulting reports the FAA received from" consulting experts. *Id*. at 1082-83.

7

The purported causal relationship in this case is more like the one in *Ohio State Chiropractic* than *Bennett*. ProMedica is obtaining a valuable marketing benefit from placing third-party tracking tools on its property. Compl. at ¶ 219. This involves ProMedica disclosing patient data to Facebook, Google, and others. This is akin to the 'private billing dispute in *Ohio State Chiropractic*. The federal government did not give ProMedica consulting reports on how to disclose this information, unlike in *Bennett*, when the FAA gave the defendant specifications on how to remediate the mold.

This case is similar to *Cabalce v. Thomas E. Blanchard & Associates, Inc.*, 797 F.3d 720 (9th Cir. 2015), a case involving injuries resulting from the handling of government-seized fireworks. In *Cabalce*, the Ninth Circuit held that a defendant had a contract with the Department of the Treasury to store and destroy fireworks the government had seized. *Id*. at 723-24. There was a deadly explosion that occurred before the defendant could safely destroy the fireworks. *Id*. The Ninth Circuit held that the defendant was unable to satisfy the causal nexus requirement, as there was no evidence that the defendant was operating under federal supervision or control when it devised the destruction plan. *Id*. at 729.

The Order notes that ProMedica has alleged that "the patient portal was created directly in response to PIP," but this is not enough. Doc. 18 at PageID #: 587. In *Ohio State Chiropractic*, the plaintiff was alleging overbilling, which was handled through the defendant's Medicare Advantage plan. Likewise, in *Cabalce*, the decedents perished after an explosion of fireworks that the defendant was only storing as a result of a government contract. Thus, it is quite possible that the Sixth Circuit would disagree with this Court's conclusion.

In addition, allowing the allegations in this case to satisfy the causal nexus requirement would remove the low bar that the case law has put in place. For instance, federal regulations require that, in order to participate in Medicaid and receive funding, facilities must meet such requirements as having sufficient staff (42 CFR § 483.35), developing a comprehensive care plan for each resident (42 CFR § 483.20), and maintaining accurate, complete, and easily accessible clinical records on each resident (42 CFR § 483.75). Under the Order, a malpractice case involving improper care at a facility implicating these regulations—or myriad others—would allow the facility to remove the case to federal court under federal officer removal. This transforms the scope of the jurisdictional basis for removal, and the Sixth Circuit would likely disagree with such a broad reading of the federal officer removal statute. Accordingly, certification is proper.

### III. IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE LITIGATION

To satisfy the final element, all that is required is that "an immediate appeal may materially advance the ultimate termination of the litigation." *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536-537 (7th Cir. 2012) (emphasis in original). Jurisdictional issues, such as remand orders, meet this requirement. *See, e.g.*, *Weickert*, 638 F.Supp.2d at 831 ("A reversal of this Court's decision on standing would terminate this action in federal court and require remand back to state court. Clearly, this litigation will be materially advanced by first resolving the jurisdictional issue.").

The most prominent example is *Watson* itself, which the Supreme Court decided after the District Court and the Eighth Circuit denied the plaintiffs' motion to remand. *See* 551 U.S. at 147. The District Court in Watson noted, "[a]n order denying a motion to remand a case to the state court from which the case was removed may be certified for interlocutory appeal." *Watson v. Philip Morris Companies, Inc.*, No. 4:03-cv-519 (GTE), 2003 WL 23272484, at *22 (E.D. Ark.

9

Dec. 12, 2003) (citing 9 James W. Moore, Moore's Federal Practice ¶ 110.22[2], at 271-72 (2d ed. 1996)).

        Respectfully submitted,

        *s/ Kevin C. Hulick*
        STUART E. SCOTT (0064834)
        KEVIN C. HULICK (0093921)
        **SPANGENBERG SHIBLEY & LIBER LLP**
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH 44114
        (216) 696-3232
        (216) 696-3924 (FAX)
        *sscott@spanglaw.com*
        *khulick@spanglaw.com*

        MITCHELL BREIT (*pro hac vice*)
        JASON 'JAY' BARNES (*pro hac vice*)
        **SIMMONS HANLY CONROY LLC**
        112 Madison Avenue, 7th Floor
        New York, NY 10016-7416
        (212) 784-6400
        (212) 213-5949 (FAX)
        *mbreit@simmonsfirm.com*
        *jaybarnes@simmonsfirm.com*

        ***Counsel for Plaintiff and the Proposed Class***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of November 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.

*s/ Kevin C. Hulick*
STUART E. SCOTT (0064834)
KEVIN C. HULICK (0093921)
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (FAX)
*sscott@spanglaw.com*
*khulick@spanglaw.com*

MITCHELL BREIT (*pro hac vice*)
JASON 'JAY' BARNES (*pro hac vice*)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY  10016-7416
(212) 784-6400
(212) 213-5949 (FAX)
*mbreit@simmonsfirm.com*
*jaybarnes@simmonsfirm.com*

*Counsel for Plaintiff and the Proposed Class*